**AMERICAN NAT. INS. CO. v. FERGUSON.**

No. 2632.

Court of Civil Appeals of Texas. Eastland.

March 12, 1948.

Rehearing Denied April 2, 1948.

Carl M. Anderson, of Sweetwater, for appellant.

Thomas L. Blanton, of Albany, for appellee.

LONG, Justice.

Mrs. Opal C. Ferguson instituted this suit against American National Insurance Company, upon a life insurance policy issued by defendant upon the life of Albert E. Ferguson, her deceased husband, in

which plaintiff was named beneficiary. Plaintiff sued for $2,000.00 (the face of the policy being $1,000.00 with a provision for double indemnity in the sum of $2,000.00, if insured died before he reached the age of 60 years) and for the statutory 12% penalty and attorneys' fees in the sum of $500.00. The Insurance Company defended on the ground, among others, that such policy never became effective as a contract of insurance because the insured was not in good health when the policy was delivered and because of fraudulent representations in the application for such insurance. Based upon findings of the jury, adverse to defendant's contention, the court entered a judgment in favor of plaintiff for $2,000.00 plus the 12% penalty and $250.00 attorneys' fees, from which judgment defendant has appealed.

At the conclusion of the testimony, defendant filed a motion for an instructed verdict which was overruled. Defendant contends the evidence conclusively established that the insured was not in good health at the time the policy of insurance was delivered to him, and that he was suffering with a cancer or an ulcer at the time he made the application for such insurance. It is further contended that if the evidence does not conclusively establish these facts, that they are established by the overwhelming weight of the evidence.

Dr. Callan, a witness for the defendant, testified in substance, as follows:

That he was a practicing physician and surgeon at Rotan, Texas, and operated a hospital in connection with his practice. That the first time he saw the insured personally was at his clinic on December 27, 1945. That insured came to him complaining of pain in his abdomen and of diarrhea. He made an examination of the insured, including a blood count and urinalysis, and he came to the conclusion that he had an infection in his bowels, in other words, he had infectious diarrhea; that he prescribed for him at that time.

The next time he saw him was on March 23, 1946, at which time insured came to him complaining of pain in the upper part of his abdomen. He made an examination of insured, checked his blood count, examined his abdomen, his chest and his heart, and told him to come back and have an X-ray made of his stomach and bowels. He came back on March 26, 1946, at which time an X-ray was made. From his examination, the doctor came to the conclusion that insured had an ulcer in the upper part of the small bowel. He told Mr. Ferguson on that occasion that in his opinion, he had an ulcer.

The next time he saw Mr. Ferguson was on November 15, 1946. That insured at that time had pain in the upper part of his stomach which the doctor thought was an ulcer of the stomach. He came back to the hospital in December, 1946, at which time the doctor performed an operation on him and found that he had a cancer of the stomach. The insured died within a few days after such operation.

The doctor testified in his opinion, the insured had a cancer or ulcer of the stomach in March, 1946, and that insured was not in good health at any time from March, 1946, until the date of his death.

The doctor further testified that on December 27, 1945, when insured first came to him, that many people in the vicinity of Rotan were suffering from diarrhea.

The doctor admitted on cross-examination that after he made the X-ray examination of the insured in March, 1946, that he talked to the wife of insured, and his son-in-law, and told them that Mr. Ferguson had some bad teeth; that he must have them extracted; that he was not properly masticating his food.

The policy of insurance was dated May 20, 1946 and was delivered on May 28, 1946. At that time, insured was 42 years of age. He had never had any serious ailment prior to December 27, 1945. Mrs. Hazel Wallace, J. G. Pryor, Jr., Mrs. W. F. Wicker, W. E. Patton, and the plaintiff, Mrs. Opal Ferguson, all testified that they were closely associated with insured and that he worked every day with heavy machinery from March 26, 1946 to November 15, 1946, and that during that time, he appeared to be a strong, vigorous, healthy man. The witnesses Pryor and Patton testified that they worked with insured and that he was able to do more

work than either of them. The evidence further shows that insured's weekly pay checks from May 11, 1946, to June 1, 1946, amounted to $221.93, and for the following month of June, he earned $317.81.

It is further shown from the testimony of J. G. Pryor, Jr., and the plaintiff, Mrs. Opal Ferguson, that Dr. Callan did not tell the insured at the time and immediately after an X-ray picture was taken of his body at the hospital in Rotan, that he (the insured) had an ulcer. Said witnesses testified that Dr. Callan told the insured that he had some bad teeth; that he was not properly masticating his food, and advised that he have his teeth extracted.

■ It is well settled in Texas that the delivery of a policy of insurance to an insured while he is in good health, is a condition precedent to said policy coming into being as a valid contract. American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294. If the evidence shows conclusively in this case that insured was not in good health when the policy of insurance was delivered, then plaintiff cannot recover. This is true even though insured, in good faith, believed that he was in sound health at the time the policy was delivered. American Nat. Ins. Co. v. Lawson, supra.

■ However, it is our opinion that the evidence in this case does not conclusively show that the insured was not in good health at the date of the delivery of the policy of insurance. It is true that Dr. Callan expressed the opinion that insured had a cancer on the date of the delivery of the policy, but under the law, this evidence is not conclusive.

"The opinion testimony of experts, although persuasive, under most circumstances is not conclusive. It is peculiarly within the province of the jury to weight opinion evidence, taking into consideration the intelligence, learning, and experience of the witness and the degree of attention which he gave the matter. The judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not necessarily conclusive on the jury or the trier of facts, unless the subject is one for experts or skilled witnesses alone where the jury or the court cannot properly be assumed to have, or be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry." Coxson v. Atlantic Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945.

■ As said by Judge Grissom of this Court, in the case of Texas Life Ins. Co. v. Hatch et al., Tex. Civ.App., 167 S.W.2d 802, 806:

"It is also established that non-expert witnesses who have had opportunity to observe the appearance and actions of another, can properly testify that such person was in good health so far as they knew, that she appeared to be in good health, looked healthy as usual, continued her usual work in her customary manner, and the like. That such testimony of lay witnesses, even if opposed by the opinion of able and reputable physicians to the effect that at the time in question such person was not in good health, merely raises an issue of fact for the decision of a jury as to the true condition of such person's health at some prior time." (Citing a number of cases).

■ It is our opinion that the evidence in this case raises an issue of fact for the determination of the jury as to whether the insured was in good health at the time of delivery of the policy. Likewise, issues of fact are raised by the evidence as to whether the insured had a cancer or an ulcer at the time of the delivery of the policy. The evidence of Dr. Callan, although persuasive, is not conclusive. Witnesses who were closely associated with the insured, testified that in their opinion, he was in good health and that he was a strong, robust, healthy and hard working man. For some six months after delivery of the policy the insured left his home in the early morning of each day and went to work at a rock crusher. He handled heavy machinery such as a bull dozer. He worked every day. There was no change in his physical appearance. Consequently, we believe that the jury had the right to find, as it did, from all of

the facts and circumstances in evidence, that the insured was in good health at the time the policy was delivered and that he did not have a cancer or ulcer at such time. Such findings have support in the evidence. The trial court did not err in overruling defendant's motion for an instructed verdict. Clark v. National Life & Acc. Ins. Co., Tex., 200 S.W.2d 820; Vann v. National Life & Accident Ins. Co., Tex.Com.App., 24 S.W.2d 347.

By other points, the defendant contends that the court erred in rendering judgment against it because it appears on the face of plaintiff's supplemental petition that Mr. Ferguson, the insured, was not in good health when the policy of insurance was delivered to him. We have carefully examined plaintiff's pleadings and it is our opinion when the same are construed as a whole, that the points raised on this question are not well taken and that the pleadings do not show on their face that the insured was not in good health at the time of delivery of the policy. The portion of the pleadings that defendant contends is an admission that insured had a cancer at the time the application for the insurance was made, is proceeded by a general denial. It is well established that a general denial puts in issue all material allegations in the pleadings of the opposite side. First State Bank of Loraine v. Jackson, Tex.Civ.App., 13 S. W.2d 979.

By another point, defendant contends that the court erred in not granting a new trial because the answer of the jury to defendant's requested Special Issue No. 14 is contrary to the overwhelming weight and preponderance of the evidence. Said issue reads as follows:

"Do you find from a preponderance of the evidence that the statement in the application that Albert E. Ferguson had not received any medical or surgical advice or attention within the past ten years was a material representation. Answer 'Yes' or 'No'."

To this issue the jury answered "No."

It is shown from the testimony that the insured did not seek out the insurance agent and prevail upon him to write the policy of insurance. On the contrary, it is shown that Mr. Waddell, the agent for the insurance company, and Mr. Nelson, one of its District Superintendents, was at the home of the insured in connection with a policy of insurance held by a daughter of the insured. That while there on that occasion, these two gentlemen presented to the insured a special offer the Company was making at that time, especially that part of the policy which provided if the insured should die before he reached the age of 60, the policy would pay $2,000.00 instead of $1,000.00, its face value. It is further shown that the agent, Mr. Waddell, had been insisting for some time upon the insured taking out a policy. After the insured had agreed to buy the insurance, it is shown that Mr. Nelson read the questions in the application to the insured, and Mr. Waddell wrote his answers thereto on the application blank. That when that portion of the application was reached wherein it inquired if the insured had received any medical or surgical advice or attention within the past ten years, he told these gentlemen he had been to see Dr. Callan about a month before, that he had a sour, upset stomach, and that Mr. Nelson, the District Superintendent, said that was immaterial; that lots of people had sour, upset stomachs, and he failed to include that portion of the insured's answer in the application. The insurance company, after having been advised by the insured that he had consulted Dr. Callan about a month prior to his application, proceeded to issue and deliver the policy without any medical examination of the insured. Under such circumstances, it is our belief that the jury was authorized in finding that the representation as made in the application that insured had not consulted a doctor within the past ten years, was immaterial and was not relied upon in any way by the Company in writing such policy of insurance. National Life & Accident Ins. Co. v. Muckelroy et al., Tex.Civ.App., 40 S.W.2d 1115.

Complaint is made of certain portions of the closing argument of counsel for the plaintiff. We have carefully examined the bills of exception relative thereto, and it is apparent that a portion

of the argument was probably made in reply to argument of counsel for the defendant. There are parts of the argument that were probably prejudicial to the rights of defendant, but in view of the fact that the careful trial court instructed the jury not to consider such argument, we believe that any harmful effect was removed by reason of such instructions and reversible error is not shown.

We have examined all points raised by the defendant in its brief, and it is our opinion that reversible error is not shown. The judgment of the trial court is affirmed.