MASSACHUSETTS MUTUAL LIFE IN-
SURANCE COMPANY, Appellant,

v.

Mattie Emmaline MAYES, Appellee.

No. 20077.

Court of Civil Appeals of Texas,
Dallas.

Dec. 3, 1979.

Rehearing Denied Jan. 9, 1980.

Jerry P. Jones, Eugene W. Brees, II,
Thompson & Knight, Dallas, for appellant.

Bradford D. Corrigan, Jr., Taylor, Mizell,
Price, Corrigan & Smith, Dallas, for appel-
lee.

Before GUITTARD, C. J., and ROBERT-
SON and HUMPHREYS, JJ.

GUITTARD, Chief Justice.

This suit concerns the validity of two
contracts of life insurance. After death of
the insured, the insurance company sued
the beneficiary for a declaratory judgment
rescinding the contracts on the ground that
the insured failed to inform the company
that material conditions affecting his health
had changed after he signed the applica-
tions for the policies and before the policies
were delivered to him. The company also
alleged that the contracts never became
effective because of non-compliance with a
condition precedent providing that the com-
pany would be liable only if at the time of
delivery of the policies, all answers in the
applications were still full, complete and
true to the best knowledge and belief of the
insured. The beneficiary counterclaimed
for the proceeds of the policies. On trial
before a jury, most of the special issues
were answered in favor of the company, but
the jury returned negative answers to a
series of issues inquiring whether the fail-
ure of the insured to disclose the changes in
the condition of his health "was for the
purpose of inducing" the company to issue
the policies. On the basis of these answers,
the trial court rendered judgment for the
beneficiary for the amount of the proceeds.
The company appeals on the ground that
these answers are immaterial to its defense
of failure to comply with the condition
precedent and that it is entitled to judg-
ment based on the other answers of the
jury. We agree, and, accordingly, we re-
verse and remand with instructions to limit
recovery to return of the premiums.

The alleged condition precedent is con-
tained in each of the policy applications on
the page bearing the signature of the in-
sured. The pertinent provisions are as fol-
lows:

To the best of my (our) knowledge and belief, all answers and statements contained herein are full, complete and true and were correctly recorded before this application was signed; and it is agreed that: . . . (b) if the first premium on the insurance herein applied for has not been paid, *the Company shall incur no liability* under this application *unless and until* the application has been completed and approved and the policy has been issued and delivered to the owner designated therein and the first premium specified in the policy has been paid during the lifetime of each person proposed for insurance *and then only if at the time of said delivery* and payment *all answers and statements contained in Parts 1 and 2 of this application* and any amendments thereof and supplements thereto *are then full, complete and true to the best of my (our) knowledge and belief* as though given at the time of said delivery and payment . . .. (Emphasis added.)

The pertinent statements in the applications are the insured's answers to certain questions, as follows:

4. During the past five years, have you had:

   A. Advice from or attendance or treatment by physicians, other practitioners or psychologists?

   Answer: Yes. (A brief handwritten explanation of this treatment was included in a space provided for the purpose, but, of course, it did not mention the later treatment by a physician shown by the evidence.)

   B. Treatment or observation in a hospital or sanitarium?

   Answer: No.

   C. X–ray, electrocardiographic or blood examinations?

   Answer: No.

5. At any time have you been treated for or had any known indication of:

   A. A disorder of the heart, blood vessels, blood or glands?

   Answer: No.

6. During the past five years, have you had any known indication of:

A. Pain, pressure or discomfort in the chest?

Answer: No.

The jury findings relied on by the company as establishing invalidity of the policies are the following: that when the policies were delivered to the insured, the condition of his health had changed to the extent that the answers to each of the five questions above quoted had become untrue; that the insured knew that the condition of his health had changed to that extent; that the insured failed to disclose such change to the company; that the answers actually given to each of the five questions were material in the sense that disclosure of the true facts would have influenced the company in making its decision in the risk or premium category in which it was issued; and that the company relied on the answers actually given when issuing the insurance policies in question. None of these findings is attacked for lack or insufficiency of evidence to support them.

The negative findings on which the judgment was based were given in answer to the several subdivisions of issue number four, which inquired whether the failure of the insured to disclose that the condition of his health had changed to the extent that is answers to the five questions in the application became untrue "was for the purpose of inducing Massachusetts Mutual Insurance Company to issue the insurance policies in question."

The company contends on this appeal that the trial court's judgment for the beneficiary is erroneous because the applications for the policies establish the existence of a condition precedent to the effectiveness of the policies and the jury's findings establish that this condition was not satisfied. In support of the validity of such a condition precedent, the company cites decisions giving controlling effect to contractual provisions that a policy shall not become effective unless delivered when the insured is in good health. Among these decisions are: *Lincoln Income Life Ins. Co. v. Mayberry,* 162 Tex. 492, 347 S.W.2d 598 (1961); *Texas*

Prudential Ins. Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242 (1957); Great Nat'l LIfe Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602 (Tex.Comm.App.1940, opinion adopted); American Nat'l Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294 (Tex.Comm'n App.1939, opinion adopted); United Savings Life Ins. Co. v. Coulson, 560 S.W.2d 211 (Tex.Civ. App.—Amarillo 1977, writ ref'd n. r. e.). The company contends that these authorities are controlling because the provision in question is in effect a "good health" provision.

The beneficiary contends that this provision is not a "good health" provision because, by its terms, the effectiveness of the policy does not depend on the actual health of the insured, but rather on whether the representations in the application were true at the time of delivery, and that to the extent that falsity of representations by the insured is relied on to avoid the policy, the case is governed by authorities holding that an insurance company cannot avoid liability on the ground of misrepresentation by the insured unless the evidence establishes fraudulent intent in the sense that the insured intended to procure issuance of the policy by representations known to be false. Among the authorities cited for this rule are the following: Washington v. Reliable Life Ins. Co., 581 S.W.2d 153 (Tex.1979); Allen v. American Nat'l Ins. Co., 380 S.W.2d 604 (Tex.1964); Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820 (1947); Great Southern Life Ins. Co. v. Doyle, 136 Tex. 377, 151 S.W.2d 197 (Tex. Comm'n App.1941, opinion adopted); American Central Life Ins. Co. v. Alexander, 56 S.W.2d 864 (Tex.Comm.App.1933, judgmt. adopted). The beneficiary argues that these cases establish a strong policy of the Texas courts to require fraudulent intent in order to avoid a policy for nondisclosure as well as for misrepresentation and that this policy would be defeated if the language of the applications here in question is given the effect of a condition precedent without establishing such fraudulent intent.

We cannot agree with this argument. None of the decisions cited by counsel for the beneficiary dealt with a contract which expressly made liability depend on whether the insured knew and believed that the statements in his application were still true at the time of delivery of the policy. Regardless of whether the provision in question is a "good health" provision, we see no reason why it should not be enforced according to the terms, regardless of decisions in other cases defining the elements of common-law fraud sufficient to avoid a contract of insurance. It seems to us that the provision in question is more favorable to the insured than a provision making delivery while the insured is in good health a condition precedent to liability, since under the provision in question, the policy becomes effective, even if the insured is not in good health at the time of delivery, provided he still believes that the statements in his application are true. If there is no public policy which prevents giving effect to a "good health" provision as a condition precedent, then, in our opinion, there is no public policy which would prevent the literal enforcement of the provisions of the present contracts according to their express terms.

The application, which we understand to be part of each of the contracts, expressly provides that the company "shall incur no liability . . . unless and until" the application is completed, the policy has been issued, and the premium paid "and then only if at the time of said delivery and payment all answers and statements contained in . . . this application . . . are then full, complete and true to the best of my (our) knowledge and belief as though given at the time of said delivery and payment." The jury's answers to issues one, two and three establish that the five quoted statements in the applications were not true, full and complete at the time of delivery of the policies because of changes in the condition of the insured's health, and that because of such changes, the insured knew at the time of delivery that they were not true to that extent. Consequently, by the express terms of the contracts, no liability was incurred by the company by reason of the death of the insured.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded to the trial court with instructions to render judgment rescinding the contracts and limiting the beneficiary's recovery to refund of the premiums paid by the insured.

Reversed and remanded, with instructions.